THOMAS B. FIELD *vs.* THE PROPRIETORS OF COMMON AND UNDIVIDED LAND IN NANTUCKET.

The liability of the owner or occupant of land, which has lain unenclosed, on enclosing or depasturing the same, to pay for the one half of a partition fence, under the Rev. Sts. *c.* 19, § 12, attaches *immediately* upon such enclosing or depasturing.

The right of an owner, who has erected a partition fence, to recover the value of one half thereof, against the owner of adjoining land, is complete by the commencement of proceedings to have the value of such half ascertained by fence viewers; and cannot be defeated by a sale of the land, and a notice by the purchaser, that he does not intend to occupy, or improve, or enclose it, subsequent to the application to the fence viewers, and notice of such application by them to the original owner, though previous to any further proceedings by them.

The *St.* of 1847, *c.* 102, repealing the Rev. Sts. *c.* 19, § 12, so far as relates to Nantucket, and providing that the depasturing only of unenclosed land in that island shall not render the owner or occupant liable for the erecting of a partition fence, is entirely prospective in its operation.

The authority of an attorney, who has been employed by a director or other analogous officer of a corporation, to appear for it, without any specific vote therefor, and who has been paid for his services by the corporation, is sufficiently proved.

THIS action was brought to recover the sum of $44·00, being the value of the one half of a partition fence between lands of the plaintiff and defendants, as ascertained by fence viewers, together with $11·36, the costs of ascertaining the same, under the provisions of the Rev. Sts. *c.* 19, § 12.

On the trial in the court of common pleas, before *Ward*, J., it appeared, on the part of the plaintiff, that on the 10th March 1838, he became the owner of a lot of land in Nantucket, adjoining land of the defendants, which was then unenclosed and unimproved. The plaintiff afterwards voluntarily built a fence on the line between his land and that of the defendants, and the defendants subsequently occupied their land for the purpose of depasturing. The plaintiff, thereupon, applied to two of the fence viewers of Nantucket, to ascertain the value of the one half of the fence so built by him, and to divide and assign to the parties their respective shares of the same. This application was made April 29th 1845; on the same day, the defendants were notified thereof, by the fence viewers, and that they had appointed the 3d of May following for the hearing; the hearing was adjourned

from time to time, from the 3d to the 24th of May, at the request of James M. Bunker, who appeared as counsel for the defendants ; and, on the 24th May, after having viewed the premises, and heard the parties, the fence viewers made their award and assignment in writing, ascertaining the value of one half of the fence erected by the plaintiff, as aforesaid, at $44·00 ; which sum, together with $11·36, the costs of ascertaining the same, was demanded by the plaintiff of the defendants, on the 9th July 1845.

On the part of the defendants, it was shown, that, after the commencement of the said proceedings, George Easton, one of the proprietors, applied to them to assign to him, in severalty, the lot of land adjoining the plaintiff's land ; and the same was accordingly set off to him, on the 13th of May 1845. On the 15th, George Easton conveyed the said land to his son Oliver W. Easton, who, on the 16th of the same May, gave the plaintiff a written notice that he had purchased the said land ; that he did not intend to occupy, or improve, or enclose the same ; and that he intended to avail himself of the exemption provided by statute for the owners of land not improving the same, but suffering it to remain unenclosed. The defendants relied on these facts, as furnishing a sufficient defence to the action.

The defendants also relied upon the *St.* of 1847, *c.* 102, which was passed after the commencement of the present action. This statute repeals the Rev. Sts. *c.* 19, § 12, so far as the same relates to the Island of Nantucket, and enacts, that " the occupant, or owner, of unenclosed land on the Island of Nantucket, when used only for depasturing, shall not be required to pay for any portion of the partition fences standing on the line between the same land and the land of the enclosure of any other occupant or owner."

The defendants further objected, that James M. Bunker, who, as stated in the certificate of the fence viewers, appeared before them and participated in the proceedings, as the counsel of the defendants, was not duly authorized for that purpose. On this point the evidence was as follows '

Charles K. Whitman, one of the fence viewers, testified that he kept a book containing the minutes of their proceedings, which had been destroyed by fire ; and that the hearing on the application of the plaintiff was adjourned from the 3d to the 24th of May, at the request of James M. Bunker, who appeared before the fence viewers, as counsel for the defend-ants, in company with Asa G. Bunker, their clerk. The latter produced the records of the defendants, from which it appeared that by a vote passed in February 1845, the agents and directors of the proprietors were authorized to retain T. G. Coffin as their counsel ; but there was no vote au-thorizing the employment of Mr. Bunker. The clerk testi-fied, that, feeling some embarrassment as to his duty, when the notice of the fence viewers was served on him, he called on George Easton, one of the agents and directors, who directed him to apply to James M. Bunker, if necessary ; that he did so, and appeared, with Mr. Bunker, before the fence viewers. James M. Bunker testified, that he appeared before the fence viewers as counsel for the defendants ; that he was employed by them ; that he conferred with George Easton repeatedly upon the subject ; that he believed that Easton called on him to go before the fence viewers, and that he went accordingly at Easton's request; that he charged the defendants a fee for his services, which was paid to him by their treasurer ; and that at the time of these proceedings he was under a general retainer as counsel for the defendants.

The judge instructed the jury, that the facts proved by the defendants were not sufficient to prevent the plaintiff from recovering ; and that the evidence, as to the employment of Mr. Bunker, was sufficient to warrant them in finding that he was duly authorized to appear as counsel for the defendants. The jury, accordingly, rendered a verdict for the plaintiff, for the amount sued for, with interest from the date of the writ; and the defendants, thereupon, filed their exceptions to the instructions.

*J. H. Clifford,* for the plaintiff.

*T. G. Coffin,* for the defendants.

FORBES, J.   This action is brought to recover the value of one moiety of a partition fence erected by the plaintiff, and the costs of ascertaining the same by fence viewers.   The claim is made under 4th, 7th, and 12th sections of the 19th chapter of the revised statutes.   The facts disclosed by the bill of exceptions, and the papers referred to, are as follows.   In 1838, the plaintiff purchased a lot of land in Nantucket, and subsequently erected the fence in question. At the time the fence was erected, the adjoining land, owned by the defendants, was unoccupied.   So long as the land of the defendants remained in that condition, the whole burden of making and maintaining the division fence rested on the plaintiff; but whenever the defendants enclosed their land, or used it for the purpose of depasturing, it became their duty to maintain one half of the partition fence ; and, inasmuch as the whole fence had been erected by the plaintiff, and the defendants, by their occupancy, availed themselves of the .abor and expense of the plaintiff in erecting it, the legislature have thought it to be reasonable that a just compensation should be made therefor by the defendants.   The statute does not provide that the liability of the defendants should arise after the land had been enclosed, or occupied, any limited period of time ; but whenever the defendants enclosed their land, or depastured it, their liability arose, and the right of the plaintiff to an indemnity became absolute.   It does not appear how long, previously to the 29th day of April 1845, the defendants had occupied their land ; the notice of the fence viewers, of that date, states merely that it is " the fence voluntarily built by the plaintiff, and which stands on the line between his land, in Nantucket, and the land heretofore unimproved, but now occupied by you, the said corporation, for the purpose of depasturing."   Nor is it material; for, assuming the fact to be as is here stated, the right of the plaintiff to compensation, under the statute, is undeniable.   The defendants make no objection to the regularity of the proceedings by the fence viewers, in matter of form ; but they contend that before the proceedings

were completed, certain changes had taken place, which rendered them nugatory. The proceedings of the fence viewers were completed on the 24th of May, and on the 13th of May, upon the application of George Easton, one of the proprietors, there was set off to him, in severalty, the lot adjoining to that of the plaintiff. On the 15th of May, George Easton conveyed the land, thus set off to him, to his son, Oliver W. Easton, who, on the next day, gave notice of the purchase to the plaintiff, and that he did not intend to occupy or improve the land at present; that he should not enclose it, but would avail himself of the statute, &c. These transactions, which took place after proceedings had been commenced pursuant to the statute, cannot change the rights of the parties. The plaintiff had, at that time, a legal claim to contribution, and, although the defendants, or their assignees, might avoid the burden of maintaining their moiety of the fence, in the manner pointed out by the statute, yet a bare notice of an intention not to occupy would not have that effect. The Rev. Sts. *c.* 19, § 15, provide that, " if any person shall *lay his lands common,* and determine not to improve any part of the same adjoining the fence that may have been divided as aforesaid, and shall give six months' notice of his determination to all the adjoining occupants of the land, he shall not be required to keep up or support said fence during the time that his lands shall so lie common and unimproved." In this section, the determination not to improve is coupled with the act of laying the land in common; and both must concur, together with six months' notice, in order to exonerate the proprietor. It does not appear, in the present case, that O. W. Easton ceased to occupy his land, and it does appear that the six months' notice was not given; we think it to be very clear that this defence cannot be maintained. Nor is there any force in the second objection. The *St.* 1847, *c.* 102, was passed after the present action was commenced, and nearly two years after the proceedings before the fence viewers were instituted. That act relieves a certain description of occupants on the island of Nantucket

from the burden of maintaining partition fences; it was pro-
spective in its operation, and it neither ought to have, nor
was it designed to have, any effect upon the claim of the
plaintiff.

The defendants also objected, that J. M. Bunker, Esq.,
named in the record of the fence viewers, was not authorized
to appear for them, as counsel, in these proceedings. If the
defendants were properly notified by the fence viewers, it is
difficult to perceive how the authority of Mr. Bunker be-
comes material; the evidence upon this point, however, has
been reported, and it appears to us that it was sufficient to
warrant the jury in finding that Mr. Bunker was authorized
to appear as counsel for the defendants; and, indeed, unless
the veracity of the witness was impeached, we do not see
how the jury could have arrived at any other conclusion.
The exceptions are overruled, and judgment is to be entered
for the plaintiff.